**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

RODERICK HICKS, #172188,          :

    **Plaintiff,**          :

**vs.**          :  **CIVIL ACTION 20-00445-JB-B**

MARY COOK, *et al.,*          :

    **Defendants.**          :

**<u>REPORT AND RECOMMENDATION</u>**

Plaintiff Roderick Hicks, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). Upon careful review, it is recommended that Hicks' Eighth and Fourteenth Amendment claims against Defendant Tamarowia Dailey be dismissed without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief can be granted; that Hicks' claims against Dailey and Cook for violations of the Fourth Amendment be dismissed with prejudice pursuant 28 U.S.C. § 1915(e)(2)(B)(i) as frivolous; that Hicks' Eighth and Fourteenth Amendment claims against Defendant Mary Cook be dismissed with prejudice pursuant 28 U.S.C. § 1915(e)(2)(B)(i) as frivolous; and that the Court decline to

exercise its supplemental jurisdiction over any state-law claims. It is, therefore, recommended that this action be dismissed in its entirety.[1]

## I. Complaint. (Doc. 1).

Hicks named as Defendants Mary Cook, Warden of Fountain Correctional Facility ("Fountain"), and Tamarowia Dailey, a correctional officer at Fountain. (Doc. 1 at 5, PageID.5).[2]

In his complaint, Hicks contends that, on July 9, 2020, at approximately 8:20 a.m., he was the last inmate entering H-Dorm behind five or six inmates. (Doc. 1 at 4, PageID.4). "Just as [he] walked through the steel[] barred gate, CO Tamarowia Dailey, . . , slammed the gate closed with an exceedingly strong amount of force, more than was necessary. Had the gate struck any part of [his] body or the back of his head, it could have caused some serious injury." (Id.). Hicks alleges that he was shocked by the

---

[1] Having recommended that Hicks' Eighth and Fourteenth Amendment claims against Defendant Dailey be dismissed for failure to state a claim upon which relief can be granted, the undersigned further recommends that Hicks be given one opportunity to file a proposed amended complaint, within the time period for filing objections to the Report and Recommendation, that states a plausible Eighth or Fourteenth Amendment claim against Defendant Dailey. As discussed herein, Hicks' remaining claims are frivolous and, thus, are due to be dismissed, with prejudice, without leave to amend.

[2] Hicks also named as a Defendant Lieutenant James Smith, but later voluntarily dismissed him. (Doc. 1; Doc. 11 at 3, PageID.72; Doc. 16, PageID.80).

gate's hard slamming, and as a result, he immediately turned toward
Defendant Dailey and asked her why she slammed the gate in such a
"hard" and "angry manner." (Id. & at 11, PageID.4, 11). Defendant
Dailey responded, "You better get the hell outta my face," and
slapped the right side of his face. (Id. at 9, 11, 14, PageID.9,
11, 14). According to Hicks, he was confused and unsure of
Defendant Dailey's next actions, so he defensively caught
Defendant Daily's wrist to "ward off any further attack" and,
immediately realizing the seriousness of the situation, he quickly
"let go of CO Dailey." (Id. at 9, 11, PageID.9, 11).

Defendant Dailey called over the radio for assistance. (Id.
at 11, PageID.11). Lieutenant Smith arrived on the scene and
instructed Hicks to go outside to the recreational yard and
indicated that he would handle the situation. (Id.). Officer
Phiefer advised Hicks that a body chart needed to be done. (Id.).
After the body chart was completed, Hicks was escorted to a one-
man cell on the L-side of the restrictive housing unit ("RHU").
(Id.). Lieutenant Smith told Hicks that he was being locked up
because Defendant Dailey was charging him with assault. (Id. at
12, PageID.12). Hicks advised Smith that all Smith needed to do
was review the security camera that was pointed directly at the
gate. (Id.). Smith did not respond. (Id.). A couple of days
later, when Smith was walking through the RHU, Hicks again

3

attempted to discuss the incident with Smith.  (Id.).  Smith told
Hicks that he would need to discuss it with the warden because she
was the only one who was authorized to "roll back" the camera and
she would not return until Monday.  (Id.).

Hicks was served a disciplinary on July 10, 2020.  (Id.).
Hicks avers that on July 15, 2020, Lieutenant Jennifer Austin held
a disciplinary hearing and found him guilty of assault even though
Defendant Dailey "admit[ed]" that she "assaulted" him.  (Id.).
Hicks further avers that Warden Anthony Smiley approved the
"find[ing]s," and he was served with a copy of the discipline on
July 17, 2020.  (Id.).  However, Hicks did not attach a copy of
the disciplinary report to his complaint, nor did he describe the
disciplinary sentence that he received.

Hicks alleges that, after he was found guilty of assault, he
wrote to Defendant Cook about the incident on July 17, 2020.  (Id.
at 16, PageID.16).  Later, Warden Smiley came through segregation
and asked for a copy of the letter that he sent to Defendant Cook.
Hicks provided Smiley with a copy of the letter, but never heard
back from him about the letter.  (Id.).  Hicks further contends
that Captain Knight also spoke to him about the issue and said
that he would follow up with the head of classification.  (Id.).

For relief, Hicks seeks to have the disciplinary expunged and
associated paperwork removed from his record and institutional

4

files, to have a position created where nonbiased parties review serious incidents before they go to a disciplinary, to receive damages as determined by the Court for being charged with assault and placed in segregation, to have a training program created so officers would know the proper way to handle certain situations, and to have the Court grant such other relief that it deems proper. (Id. at 13, PageID.13).

## II. Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Hicks is proceeding *in forma pauperis*, the Court is reviewing his complaint (Doc. 1) under 28 U.S.C. § 1915(e)(2)(B). Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, id. at 327, 109 S.Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist. Id.

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127

S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 555, 557, 127 S.Ct. at 1965, 1966 (second brackets in original).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. 199, 215, 127 S.Ct. 910, 920-21, 166 L.Ed.2d 798 (2007).

When considering a *pro se* litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney, Tannenbaum v. U.S., 148 F.3d 1262, 1263 (11th Cir. 1998), but "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir.) (citation and quotation marks omitted), cert. denied, 574 U.S. 1047 (2014).  Furthermore, a court treats as true factual allegations, but it does not treat as true conclusory assertions

6

or a recitation of a cause of action's elements.  Iqbal, 566 U.S. at 681, 129 S.Ct. at 1951.  In addition, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir.), cert. denied, 493 U.S. 863 (1989).

## III. Discussion.

### A. Eighth Amendment Claim Against Defendant Dailey.

Hicks asserts an Eighth Amendment claim against Defendant Dailey for slapping him.  Whenever prison officials are accused of violating the Eighth Amendment's prohibition of cruel and unusual punishment by using excessive physical force, "the core judicial inquiry is. . . : whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992) (citing Whitley v. Albers, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992)).  However, excluded from recognition as an Eighth Amendment violation are "*de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Wilkins v. Gaddy, 559 U.S. 34, 37-38, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010).  A "'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim."

_Id._ at 38, 130 S.Ct. at 1178 (citation and internal quotations marks omitted) (quoting _Johnson v. Glick_, 481 F.2d 1028, 1033 (2d Cir. 1973)).  The correlation between injury and force is imperfect, but force is what ultimately counts.  _Id._  To determine whether the force applied by officials was malicious or sadistic,

> [W]e look at "the need for the application of force; the relationship between the need and the amount of force that was used; and the extent of the injury inflicted upon the prisoner." _Id._ (citing _Whitley_, 475 U.S. at 321, 106 S.Ct. at 1085).  Additionally, we consider "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." _Whitley_, 475 U.S. at 321, 106 S.Ct. at 1085.  Not only that, but we must also give a "wide range of deference to prison officials acting to preserve discipline and security," including when considering "[d]ecisions made at the scene of a disturbance." _Bennett v. Parker_, 898 F.2d 1530, 1533 (11th Cir. 1990).

_Cockrell v. Sparks_, 510 F.3d 1307, 1311 (11th Cir. 2007).

The immediate summoning of medical assistance demonstrates an effort to temper the severity of the response.  _Id._ at 1312.  And, "[t]he extent of injury may also provide some indication of the amount of force applied." _Wilkins_, 559 U.S. 34, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010) ("As we stated in _Hudson_, not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'") (citation omitted).

8

In the present action, Hicks was the last inmate walking through gate when it slammed loudly and very near to him, but not on him.  (Id. at 4, 11, PageID.4, 11).  He then got very close to Defendant Dailey (as he was able to grab her wrist) and asked her "what [was] the meaning" of the way she closed the gate.  (Id. at 11, PageID.11).  He reports that she said, "[G]et the hell outta my face," and then slapped him.  (Id.).  She likewise was near him.  He then grabbed Defendant Dailey's wrist but, realizing the significance of his act, he quickly released his hold.  (Id.).  Given Hick's factual assertions, which at this stage, the Court accepts as true, it is reasonable to conclude that Defendant Dailey felt threatened by Hicks due to his nearness to her and his challenging question to her.  Thus, it was reasonable for her to perceive the need to act and to apply force, in this instance, a single slap.

The amount of force used by Defendant Dailey was minimal.  She slapped Hicks only once, as it appears she acted in an effort to convince Hicks to move away from her face or personal space, or to create an opportunity for her to remove herself.  The perception of a threat to her was reasonable.  Moreover, she tempered her response so that it was not disproportionate to her perception of the situation, in that she slapped Hicks only once without injury-causing force; she avoided any additional use of force; and she

maintained security and discipline by not escalating the incident and by quickly calling for back-up. See Cockrell, 510 F.3d at 1311 ("'[t]he need for the use of force is established by the undisputed evidence that [the inmate] created a disturbance .... Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding.'" (quoting Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990))). Granted, Hicks also released his hold on her, and shortly thereafter, he was taken to the health care unit. Hicks does not allege any injury in his complaint (or in his other attachments to the complaint), and he did not attach a body chart and/or medical records showing an injury or any medical treatment.

The facts, as alleged by Hicks, do not establish that the force used against him was malicious or sadistic. See id. ("The amount of force conveyed by an open-handed push or shove is as near to the minimum amount as an officer can employ[.]"). Defendant Dailey's use of minimal force was "a good-faith effort to maintain or restore discipline." Wilkins, 559 U.S. at 40, 130 S.Ct. at 1180. This factual situation is similar to those in Wilkins v. Gaddy, supra, and Johnson v. Glick, supra, wherein the courts held that a "'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Wilkins, 559 U.S at 38, 130 S.Ct. at 1178 (quoting Johnson

v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)); see also Hudson, 503 U.S. at 10, 112 S.Ct. at 1000("*de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind[]" are not cruel and unusual punishments prohibited by the Eighth Amendment) (citation and quotation marks omitted). Therefore, the undersigned finds that Hicks has not stated a claim for a violation of the Eighth Amendment based on the slap by Defendant Dailey, as her spontaneous, minimal use of force was not employed maliciously or sadistically, and such a use of force is not repugnant to the conscience of mankind. See Ledlow v. Givens, 500 F. App'x 910, 912-13 (11th Cir.) (the slap received by the inmate after being restrained did not rise to an Eighth Amendment violation even though he had a bloody nose and small facial laceration that had resulted from being initially restrained),[3] cert. denied, 569 U.S. 1033 (2013); Anthony v. Schackmann, 402 F. App'x 207, 208 (9th Cir. 2010) (an "unprovoked, single slap constituted only de minimis force . . . which does not violate [the] Eighth Amendment unless it is of a sort repugnant to the conscience"); Hill v. Vannatta, 123 F. App'x 723, 724 (7th Cir. 2005) (a claim for a slap that

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11TH CIR. R. 36-2 (2005).

caused redness and swelling was dismissed as *de minimis* pursuant to 28 U.S.C. § 1915A and was affirmed on appeal); Cockrell, 510 F.3d at 1311 (the open-hand shove or push, which caused the inmate to fall breaking his hip and wrist, was "as near to the minimum amount [of force] as an officer can employ" even though the results could not have been anticipated); Curry v. Horton, 2020 WL 7416935, at *4 (N.D. Ala. 2020) (unpublished) ("a single instance of spitting and slapping [] does not constitute a malicious and sadistic application of force repugnant to the conscience"); Lewis v. Huebner, 2020 WL 1244254, at *6 (S.D.N.Y. 2020) (unpublished) ("[c]ourts have repeatedly held that a single slap that results in no injury constitutes unactionable, *de minimis* force"); Hall v. Billups, 2017 WL 9471783, at *3 (M.D. Ala. 2017)(unpublished) (one branchial stun slap to the left side of plaintiff's neck with no injury being suffered constituted a *de miminis* use of force which is excluded from the Eighth Amendment as such contact is not repugnant to the conscience of mankind); Hibbert v. Harris, 2016 WL 4059148, at *9 (N.D. Fla. 2016) (unpublished) (several slaps to the head that did not result in injury did not rise to the level of a constitutional violation); Black v. Butler, 2013 WL 6085980, at *9 (N.D. Ala. 2013) (unpublished) (a slap to the head and a thump to the eye, with no mention of an injury being suffered or that medical treatment was required, were *de minimis* intrusions

that did not violate the Eighth Amendment); Ellis v. Georgia, 2008 WL 5100796, at *2 (N.D. Ga. 2008) (unpublished) (one slap was not sufficiently serious to rise to the level of a constitutional violation).[4]

## B. Fourteenth Amendment Claim Against Defendant Dailey.

Turning next to the disciplinary proceeding, Hicks asserts that Defendant Dailey charged him with assault and that he was found guilty. (Doc. 1 at 12, PageID.12). Hicks does not specify the sentence that he received, and he did not attach a copy of the disciplinary report from the proceeding. Based on Hicks' assertion that he wants a review of the video of the incident between him and Defendant Daily, that Defendant Dailey admitted to assaulting him, and that he wants any indication of the disciplinary removed from his records and files, it appears that Hicks is claiming that he was falsely charged with the disciplinary or is innocent of the charge.

As a preliminary matter, there is not a constitutionally protected right against being "falsely or wrongly accused" of a disciplinary infraction. Freeman v. Rideout, 808 F.2d 949, 951

---

[4] Although the undersigned recommends that Hicks' Eighth Amendment claim against Defendant Dailey be dismissed without prejudice for failure to state a claim upon which relief can be granted, it is very doubtful that Hicks could, even with an opportunity to replead, state an Eighth Amendment claim against Defendant Dailey claim considering his factual allegations and court decisions referenced above.

(7th Cir.), <u>cert. denied</u>, 485 U.S. 982 (1988); <u>see Watson v. Turner</u>, 2020 WL 4643478, at *7 (N.D. Ala. 2020) (unpublished); <u>Pierce v. Carson</u>, 2014 WL 5643336, at *9 (M.D. Ala. 2014) (unpublished).   Rather, the right a prisoner possesses is not to be denied a liberty interest without due process.   <u>Freeman</u>, 808 F.2d at 951; <u>Bass v. Perrin</u>, 170 F.3d 1312, 1318 (11th Cir. 1999).

To state a section 1983 claim, a constitutional or federal right must have been violated.   <u>Harvey v. Harvey</u>, 949 F.2d 1127, 1130 (11th Cir. 1992).   In the context of prison disciplinary proceeding, the right involved is the right to due process when a prisoner is deprived of a liberty interest.   U.S. CONST. amend. XIV (The Due Process Clause of Fourteenth Amendment protects against deprivations of "life, liberty, or property, without due process of law.").   "A liberty interest may arise from the Constitution itself. . . or it may arise from an expectation or interest created by state laws or policies. . . ."   <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005).

The Supreme Court in <u>Sandin v. Conner</u>, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), examined the sources of liberty interests associated with disciplinary proceedings.   The Court held that the Due Process Clause of the Constitution does not have a liberty interest itself entitling an inmate to due process protections established by <u>Wolff v. McDonnell</u>, 418 U.S. 539, 94

14

S.Ct. 2963, 41 L.Ed.2d 935 (1974).  Id. at 487, 115 S.Ct. at 2302.
The Court, however, recognized that States may create liberty
interests protected by the Due Process Clause.  Id. at 484, 115
S.Ct. at 2300.  It held that "[t]hese interests will be generally
limited to freedom from restraint which, while not exceeding the
sentence in such an unexpected manner as to give rise to protection
by the Due Process Clause of its own force, see, e.g., Vitek, 445
U.S., at 493, 100 S.Ct., at 1263-1264 (transfer to mental
hospital), and Washington, 494 U.S., at 221-222, 110 S.Ct., at
1036-1037 (involuntary administration of psychotropic drugs),
nonetheless imposes atypical and significant hardship on the
inmate in relation to the ordinary incidents of prison life."  Id.
The Eleventh Circuit explained Sandin's holding, stating:

> [T]he Supreme Court has made clear that there
> are two circumstances in which a prisoner can
> be further deprived of his liberty such that
> due process is required.  The first is when a
> change   in   a   prisoner's   conditions   of
> confinement is so severe that it essentially
> exceeds the sentence imposed by the court. See
> Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct.
> 2293, 2300, 132 L.Ed.2d 418 (1995); see, e.g.,
> Vitek v. Jones, 445 U.S. 480, 492-93, 100
> S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980)
> (holding that a prisoner is entitled to due
> process prior to being transferred to a mental
> hospital).  The second is when the state has
> consistently   given   a   certain   benefit   to
> prisoners   (for   instance,   via   statute   or
> administrative policy), and the deprivation of
> that benefit "imposes atypical and significant
> hardship   on   the   inmate   in   relation   to   the
> ordinary incidents of prison life."  Sandin,

15

> 515 U.S. at 484, 115 S.Ct. at 2300; see, e.g.,
> Wolff v. McDonnell, 418 U.S. 539, 558, 94
> S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974)
> (prisoners may not be deprived of statutory
> "good-time credits" without due process)[.].
> . . In the first situation, the liberty
> interest exists apart from the state; in the
> second situation, the liberty interest is
> created by the state.

Bass, 170 F.3d at 1318.

In Sandin, the Court found that Conner's disciplinary sentence of thirty days in disciplinary segregation was not a dramatic departure from his sentence and was not an "atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. at 476, 485-85, 115 S.Ct. at 2296, 2301. That is, the Court held that Conner's disciplinary sentence was not a dramatic departure from his sentence and did not work a major disruption in his environment. Id. at 485-86, 115 S.Ct. at 2301. The conditions in disciplinary segregation were found by the Court to mirror the conditions in administrative segregation and protective custody but for minor exceptions. Id. at 486, 115 S.Ct. at 2301. And, the inmates in general population were observed by the Court as having significant amounts of lockdown time as well. Id. Furthermore, the Court found that the fact that the misconduct would be on the inmate's record was too attenuated to invoke the Due Process Clause's procedural guarantees. Id. at 487, 115 S.Ct. 2302. Thus, the Court held that Conner did not have a protected

16

liberty interest entitling him to due-process protections as the range of his disciplinary segregation confinement was within the range normally expected for a prisoner serving a criminal sentence of thirty years to life. Id.; see Smith v. Deemer, 641 F. App'x. 865, 868 (11th Cir. 2016) (to find a liberty interest, the atypical and significant hardship must exist for a significant length of time). Compare Al-Amin v. Donald, 165 F. App'x 733, 739 (11th Cir. 2006) (finding thirty months' confinement to administrative segregation did not constitute an atypical and significant hardship that would give rise to a liberty interest); Lekas v. Briley, 405 F.3d 602, 611 (7th Cir. 2005) (finding the ninety-day confinement to disciplinary segregation was not an atypical and significant hardship); Morefield v. Smith, 404 F. App'x 443, 446 (11th Cir. 2010) (unpublished) (finding a four-year confinement in administrative segregation, although lengthy, did not create a liberty interest considering that the conditions of confinement were similar to those in the general population), with Williams v. Fountain, 77 F.3d 372, 374 n.3 (11th Cir.) (one year in solitary confinement resulted in a deprivation of a liberty interest), cert. denied, 519 U.S. 952 (1996); Magluta v. Samples, 375 F.3d 1269, 1282 (11th Cir. 2004) (holding five hundred days in solitary confinement under harsh conditions was an atypical and significant hardship to which due process attached).

17

In the present action, Hick's allegations do not reflect that he had a liberty interest that would entitle him to receive due process. Therefore, the undersigned finds that he has not stated a Fourteenth Amendment claim based on his disciplinary conviction against Defendant Dailey.

**C.  Fourth Amendment Claim.**

Hicks also asserts a Fourth Amendment claim against Defendants Dailey and Cook but he does not specify the exact basis for the claim.  (Doc. 1 at 5, PageID.5).  The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. § IV.  The Court presumes that Hick's Fourth Amendment claim is connected to his disciplinary proceeding as his complaint is devoid of any allegations regarding a search.  Cf. Hudson v. Palmer, 469 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) ("the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell"); Johnson v. Warden, 491 F. App'x 60, 62 (11th Cir. 2012) (same), cert. denied, 571 U.S. 916 (2013).

Another aspect of the Fourth Amendment concerns seizures; however, Hicks has not specifically articulated a claim concerning a seizure.  The Court therefore liberally construes his complaint as possibly asserting a claim for malicious prosecution based on a seizure associated with his disciplinary.  In the Eleventh Circuit, a plaintiff asserting a malicious prosecution claim in Alabama, must establish:

> (1) the elements of the common law tort of malicious prosecution; and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." <u>Id</u> (citations omitted). "As to the first prong, the constituent elements of the common law tort of malicious prosecution are: '(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the <u>plaintiff accused's favor</u>; and (4) caused damage to the plaintiff accused.'" <u>Id.</u> (citations omitted) (emphasis added). "The elements under Alabama law for the common-law tort of malicious prosecution are the same, except that they require only a 'judicial proceeding' not a 'criminal prosecution.'" <u>Id.</u> (quoting <u>Delchamps, Inc. v. Bryant</u>, 738 So.2d 824, 831–32 (Ala. 1999)).

<u>Dueberry v. Meyers</u>, 2011 WL 4591236, at *5 (S.D. Ala. 2011) (unpublished), <u>adopted</u>, 2011 WL 4574697 (S.D. Ala. 2011); <u>Grider v. City of Auburn, Ala.</u>, 618 F.3d 1240, 1256-57 (11th Cir. 2010).

In the instant action, Hicks has not shown that the disciplinary was decided in his favor; in fact, he complained of the opposite, as he was found guilty.  Furthermore, Hicks cannot

claim there was no probable cause given his acknowledgment that he grabbed Defendant Dailey by her wrist.  Thus, the undersigned finds that Hick's claim for a violation of the Fourth Amendment is frivolous and is due to be dismissed.


**D.  Defendant Mary Cook.**

On the complaint form, Hicks identified his claims against Defendant Cook as arising under the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution.  (Doc. 1 at 5, PageID.5).  For the facts to support these claims, he refers the Court to an attachment.  (Id.).  Attached to the complaint is a document titled inmate grievance/complaint to Warden Mary Cook dated July 17, 2020; however, there are no specific allegations articulated against Defendant Cook.  (Id. at 9, PageID.9).  In his grievance, Hicks reiterates the factual background related in his instant complaint and requests that she resolve the injustice against him because the cameras will prove that CO Dailey assaulted him and caused him to react in a defensive manner.  (Id. at 10, PageID.10).  Hicks also asserts that the Alabama Department of Corrections does not have a grievance procedure.  (Id. at 8, PageID.8).  He then mentions that he wrote to Defendant Cook on July 20, 2020 about the incident with Defendant Dailey.(Id. at 16, PageID.16).  These are the extent of Hicks' factual allegations

20

with regards to Defendant Cook.

In a § 1983 action, a plaintiff must establish a causal connection between a defendant's actions, orders, customs, or policies and a deprivation of the plaintiff's constitutional rights to state a claim upon which relief may be granted. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986); Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir.), cert. denied, 464 U.S. 932, (1983). In the present action, Defendant Cook's only concrete connection to Hicks is his assertion that he sent her a grievance requesting that she review the video and investigate the situation. Thus, affording a liberal construction to his statements in the attachment where Defendant Cook is mentioned, it appears Hicks is complaining about not receiving a response (and action) from her. Such an allegation, however, does not a state a claim for a violation of a constitutional right.

"As various circuits have held . . . , an inmate has no constitutionally-protected liberty interest in access to [a grievance] procedure." Bingham v. Thomas, 654 F.3d 1171, 1177 (11th Cir. 2011). Moreover, the prison grievance procedure itself "does not provide an inmate with a constitutionally protected interest." See Adams v. Rice, 40 F.3d 72, 75 (4th Cir.) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."),

cert. denied, 514 U.S. 1022 (1995). Consequently, the failure to acknowledge or respond to a grievance does not violate due process. Stallworth v. Wilkins, 802 F. App'x 435, 439-40 (11th Cir. 2020); Thomas, 237 F. App'x at 437. Because there is no right to a grievance system or a right to receive a response to a grievance, this claim against Defendant Cook is frivolous as a matter of law. Furthermore, Hicks has failed to allege facts that causally connect Defendant Cook to claims for a violation of the Eighth or Fourteenth Amendment. Thus, Hicks has failed to state a claim against Defendant Cook for a violation of the Eighth and Fourteenth Amendments. Moreover, Hicks' Eighth Amendment claim against Defendant Cook is frivolous as there is no allegation that she was present when the incident occurred or that she was otherwise connected to the incident. Estrada v. Stewart, 703 F. App'x 755, 761 (11th Cir. 2017)("Supervisory liability. . . occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation.") (citation and quotation marks omitted). Hicks' Fourteenth Amendment claim against Defendant Cook is likewise frivolous as there is no allegation that she was involved in approving or disapproving Hicks' disciplinary. Per Hicks, his disciplinary was approved by Warden Smiley, as opposed

to Defendant Cook.  (Id. at 12, PageID.12).  Thus, Hicks' claims against Defendant Cook are due to be dismissed with prejudice as frivolous.

### E. Supplemental Jurisdiction.

In addition to bringing § 1983 claims in this action, Plaintiff asserts claims arising under the Alabama Constitution. (Doc. 1 at 5, PageID.5).  The decision whether to address state-law claims after the federal claims have been dismissed is governed by 28 U.S.C. § 1367(c)(3), which provides "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction[.]"  28 U.S.C. § 1367(c)(3).  Whether to exercise supplemental jurisdiction over state-law claims is a matter of discretion with the district court, but the Eleventh Circuit encourages the dismissal of state-law claims where federal claims are dismissed prior to trial.  Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004); see Little v. Dean, 606 F. App'x 581, 582 (11th Cir. 2015) (same).  Accordingly, because Hicks' federal claims are being recommended for dismissal, it is recommended that the Court decline to exercise its supplemental jurisdiction over his state-law claims.

## IV. Conclusion.

Based upon the foregoing reasons, it is RECOMMENDED that

Hicks' Eighth and Fourteenth Amendment claims against Defendant Tamarowia Dailey be dismissed, *without prejudice*, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief can be granted. **However, within the time period for filing objections to the Report and Recommendation, Hicks is granted leave to file a proposed amended complaint that states a plausible Eighth or Fourteenth Amendment claim against Defendant Dailey only, that is, a claim upon which relief may be granted against Defendant Dailey, arising from the same incident at issue herein.**[5] See Lee v. Alachua Cnty., Fla., 461 Fed. Appx. 859, 860 (11th Cir. 2012)(requiring that a *pro se* litigant be given one chance to amend a complaint that fails to state a claim before dismissing the complaint, but recognizing that an amendment will not be allowed if it is futile, that is, subject to being dismissed or to summary judgment).

It is further RECOMMENDED that Hicks' claims against

---

[5]    In most circumstances, a *pro se* plaintiff "must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice," at least where a more carefully drafted complaint might state a claim.  Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir. 1991), overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*) (holding that the Bank rule does not apply to counseled plaintiffs).  That being said, it is doubtful that Plaintiff will be able to state a plausible Eighth or Fourteenth Amendment claim against Defendant Daily based on the allegations alleged in the original complaint.

Defendants Dailey and Cook for violations of the Fourth Amendment be dismissed, *with prejudice,* pursuant 28 U.S.C. § 1915(e)(2)(B)(i) as frivolous; that Hicks' Eighth and Fourteenth Amendment claims against Defendant Mary Cook be dismissed, *with prejudice,* pursuant 28 U.S.C. § 1915(e)(2)(B)(i) as frivolous; and that the Court decline to exercise it supplemental jurisdiction over any state-law claims. It is, therefore, RECOMMENDED, subject to Plaintiff filing a proposed amended complaint that complies with the Court's directives herein, that this action be dismissed in its entirety.

If Hicks elects to file a proposed amended complaint, he shall use the Court's § 1983 complaint form and not reference or seek to incorporate by reference his prior complaints filed in this action. An amended complaint will be subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B).  The Clerk is **DIRECTED** to send a § 1983 complaint form to Plaintiff.

<u>**NOTICE OF RIGHT TO FILE OBJECTIONS**</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. <u>See</u> 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); S.D. Ala. Gen.LR 72(c). The parties

should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

   **DONE** and **ORDERED** this **24th** day of **June, 2021**.

                                          /s/ SONJA F. BIVINS
                                    UNITED STATES MAGISTRATE JUDGE